UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Muhammad S. Awaisi,<br><br>    Defendants.<br>_____/ | Case: 2:21-cr-20295<br>Assigned To : Tarnow, Arthur J.<br>Referral Judge: Grand, David R.<br>Assign. Date : 4/30/2021<br>Description: INFO USA v. Muhammad S. Awaisi (jo)<br><br>Violations:<br>18 U.S.C. §§ 371, 1425(a) |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. An alien may naturalize and thereby attain United States citizenship when certain residency and other requirements of law are met.

2. Section 312 of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1423 (Section 312) sets forth some of those requirements: Naturalization applicants must, as a general rule, demonstrate "an understanding of the English language, including an ability to read, write, and speak words in ordinary usage in the English language: *Provided,* That the requirements…shall be met if the applicant can read or write simple words and phrases to the end that a reasonable

1

test of his literacy shall be made and that no extraordinary or unreasonable condition shall be imposed upon the applicant."

3. Section 312 also requires naturalization applicants to demonstrate a knowledge and understanding of civics, namely, of "the fundamentals of the history, and of the principles and form of government, of the United States."

4. Ordinarily, if a naturalization applicant cannot meet the English language and civics requirements, the applicant is not permitted to naturalize and become a United States citizen.

5. But Section 312 permits a naturalization applicant who is unable to meet the English language or civics requirements because of a physical or developmental disability or a mental impairment to nevertheless naturalize and become a United States citizen.

6. An applicant with such a physical or developmental disability or mental impairment must submit Form N-648 (Medical Certification for Disability Exception), a document required under the immigration laws and regulations, to U.S. Citizenship and Immigration Services (USCIS) when applying to become a naturalized citizen.

7. Form N-648 (Medical Certification for Disability Exception) is completed by a medical professional who must state (1) the clinical diagnosis of the naturalization applicant's disability or impairment, (2) a description of the

2

disability or impairment, (3) the cause of the disability or impairment, (4) the clinical methods used to diagnose the disability or impairment, and (5) a description of how the disability or impairment affects the naturalization applicant's ability to understand English or demonstrate knowledge and understanding of civics.

8. Before adjudicating a naturalization application, USCIS will interview the naturalization applicant under oath, at which time the applicant will attest to the truthfulness of the naturalization application and related documentation. Following the interview, if USCIS approves the Form N-648 (Medical Certification for Disability Exception), and if the applicant is otherwise eligible to naturalize, the application is approved, and the applicant is permitted to take the oath of citizenship, thereby becoming a United States citizen without meeting the English language and civics requirements of Section 312 that ordinarily apply.

9. Firoza VAN HORN is a licensed clinical psychologist with offices in Bloomfield Hills, Michigan.

10. Mohammad S. AWAISI is a licensed medical doctor who has practiced at the same location.

3

## COUNT ONE
**18 U.S.C. § 371 – Conspiracy to Procure Naturalization Contrary to Law**

11. The allegations in paragraphs 1 through 10 are incorporated into this count by reference.

12. From on or about January 1, 2020, in the Eastern District of Michigan, and elsewhere, VAN HORN and AWAISI, knowingly and voluntarily conspired and agreed with themselves and other individuals, both known and unknown, to procure naturalization of noncitizens, contrary to law, in violation of 18 U.S.C. § 1425(a). Specifically, it was the object of the conspiracy to provide false information to USCIS and procure naturalization for applicants who had not met the statutory requirements for citizenship.

### Manner and Means of the Conspiracy

13. It was part of the conspiracy that VAN HORN would fraudulently diagnose naturalization applicants with psychological disorders on Form N-648 (Medical Certification for Disability Exceptions), falsely stating therein that she had used various clinical methods to come to such diagnoses knowing full well she had not utilized the stated clinical methods. She would falsely state that the applicant's purported disability or impairment prevented the applicant from demonstrating one or more of the statutory requirements to become a naturalized citizen. VAN HORN would coach naturalization applicants on how to act during

4

their naturalization interviews consistent with the false diagnoses to maximize the chance of a successful interview.

14. It was part of the conspiracy that AWAISI would author supporting medical records to the Form N-648 (Medical Certification for Disability Exceptions) documentation created by VAN HORN, in which he would falsely memorialize medical exams, state false diagnoses, and issue prescriptions, including for controlled substances, without medical necessity or justification.

15. It was part of the conspiracy that naturalization applicants would submit the fraudulent documentation created by VAN HORN and AWAISI to USCIS, falsely testify under oath in support of their naturalization applications, and thereby avoid one or more of the statutory requirements for naturalization, including that applicants demonstrate the ability to read English, write English, speak English, and demonstrate a knowledge of United States history and civics.

16. It was part of the conspiracy that such naturalization applicants would make cash payments for the fraudulent documentation created by VAN HORN and AWAISI, and that VAN HORN would store significant sums of cash at her residence.

**Overt Acts**

17. The defendants and other co-conspirators committed the following overt acts, among others, in furtherance of the conspiracy:

    a. On or about June 24, 2021, VAN HORN took a $700.00 cash payment from Individual-1 as payment for creating a fraudulent Form N-648 (Medical Certification for Disability) and supporting medical record.

    b. On or about July 6, 2020, in the Eastern District of Michigan, VAN HORN did execute Form N-648 (Medical Certification for Disability) under the penalty of perjury with respect to Individual-1, in which she did willfully and knowingly state a false diagnosis for Individual-1, to wit: Major Depressive Disorder (Severe).

    c. On or around the same time and place, AWAISI did willfully and knowingly author a false medical record for use in support of the fraudulent Form N-648 (Medical Certification for Disability), in which he did state falsely that Individual-1 presented to him on or about June 25, 2020 with knee pain, depression, sleep problems, concentration problems, dizziness and vertigo.

    d. On or around the same time and place, VAN HORN coached Individual-1 on how to conduct herself at her naturalization interview consistent with her false diagnosis.

    e. On or about July 20, 2020, in the Eastern District of Michigan, VAN HORN did execute Form N-648 (Medical Certification for Disability) under the penalty of perjury with respect to Individual-2, in which she did willfully and knowingly state a false diagnosis for Individual-2, to wit: Neurocognitive Disorder Due to a Traumatic Brain Injury.

    f. On or around the same time and place, AWAISI did willfully and knowingly author a false medical record for use in support of the Form N-648 (Medical Certification for Disability) in which he did state falsely that Individual-2 presented to him on or about June 25, 2020 with complaints of lower back pain, shoulder pain, benign prostatic hyperplasia, headaches, dizziness, and concentration problems.

    g. On or around the same time and place, Individual-2 made a $700.00 cash payment for the fraudulent documentation.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

18. Pursuant to Fed. R. Cr. P. 32.2(a), the government hereby provides notice of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the

7

violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set for in this Information. Forfeiture may include, but is not limited to, VAN HORN'S interest in $46,393.01, property seized on or about November 17, 2021, and forfeiture money judgements in favor of the United States against VAN HORN in the amount of $300,000.00, and against AWAISI, in the amount of $20,000.00.

19. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of a defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

SAIMIA S. MOHSIN
Acting United States Attorney


*s/Michael C. Martin*
MICHAEL C. MARTIN
Chief, National Security Unit

*s/Jonathan Goulding*
JONATHAN GOULDING
Assistant United States Attorney

Dated: April 30, 2021

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>2:21−cr−20295 |
|---|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes ☒ No | **AUSA's Initials:** |

**Case Title:** USA v. U.S. v. Firoza Van Horn, et al.

**County where offense occurred:** Oakland

**Check One:** ☒ Felony ☐ Misdemeanor ☐ Petty

    ____Indictment/____Information --- **no** prior complaint.
    ____Indictment/ ✓ Information --- based upon prior complaint [**Case number:** 20-mj-30473 ]
    ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____ **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

April 30, 2021
    Date

s/Jonathan Goulding
Jonathan Goulding
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9742
Fax: (313) 226-4678
E-Mail address: jonathan.goulding@usdoj.gov
Attorney Bar #: MA664444

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.